IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Ella R. Hall, ) | C/A NO. 3:10-2054-CMC-JRM |
| ) | |
| Plaintiff, ) | |
| ) | **OPINION and ORDER** |
| v. ) | |
| ) | |
| Stacy Branham and Kershaw Health ) | |
| Medical Center, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Plaintiff Ella R. Hall ("Plaintiff") filed this action on August 6, 2010, against her employer, KershawHealth (incorrectly identified as Kershaw Health Medical Center), and her direct supervisor from September 2007 to December 2009, Stacy Branham ("Branham," or collectively, "Defendants"). Plaintiff seeks recovery under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et seq.* ("Title VII"); the Age Discrimination in Employment Act of 1967, as amended, 26 U.S.C. § 621 *et seq.* ("ADEA"); and the South Carolina Human Affairs Law ("SCHAL"), S.C. Code Ann. § 1-13-10 *et seq.*

**BACKGROUND**

Plaintiff is a fifty-five year old African-American, female nurse. Plaintiff alleges that she was subjected to disparate treatment and a hostile work environment (or harassment) as a nurse at KershawHealth because of her age and race. From 2000-2007, Plaintiff was on the Baylor plan, which is common in the nursing profession and provides a financial incentive to nurses to work weekends by paying them for 32 hours when they work 24 hours (or two 12-hour shifts). Under KershawHealth's policies, "Baylor staff are required to work every weekend, two 12-hour shifts, for a total of 24 hours." Dkt. 22-5 at 21. However, "Baylor staff may receive six scheduled days

off per year by submitting vacation request and approval." *Id.* Because of a trip to Oregon in 2007, Plaintiff missed at least six consecutive days of work (over the course of three weekends) without submitting a vacation request or receiving approval.[1] Plaintiff was removed from the Baylor plan in 2007 after she returned from her trip. Plaintiff alleges that she was removed from the Baylor plan because of her race and age. She also claims that she was a denied a bonus that she earned in 2010 because of her race and age.

Her claim of harassment/hostile work environment is based on her allegation that she was assigned more patients than other nurses because of her race and age and that she received patients with a higher acuity. Plaintiff suggests that a patient with a higher acuity is one that requires more time, care, or attention from a nurse.

Plaintiff also alleges that she was retaliated against because, in July 2007, she wrote a letter to the Vice President of Nursing Services to complain about the firing of an older nurse. She claims that she was removed from the Baylor plan in September 2007 after she wrote the letter (returning to a schedule of working 32 hours a week) and that her supervisor retaliated against her by assigning her more and higher acuity patients.[2]

In August 2009, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging race and age discrimination (but not retaliation). In

---

[1] Plaintiff admits that she "failed to show up for work for several weekends" in 2007. Dkt. No. 22-4 at 35 (Pl's dep.). She contends that she informed her supervisor, Branham, by telephone that she "was going out to Oregon and there was a possibility that I would not be coming back." Plaintiff did not submit evidence that she submitted any vacation request or received approval prior to her absences, nor could Plaintiff recall whether she took a leave of absence. Dkt. No. 22-4 at 36 ("I think I was on, I took vacation or something. I forgot now exactly how it all transpired . . . .").

[2] The court notes that Plaintiff has taken inconsistent positions as to why she was removed from the Baylor plan and allegedly subjected to a hostile work environment/harassment.

May 2010, the EEOC issued a notice of right to sue upon Plaintiff's request. Plaintiff filed this action on August 6, 2010. Dkt. No. 1.

On March 31, 2011, Defendants filed a motion to dismiss and for summary judgment. The matter is currently before the court for review of the Report and Recommendation ("Report") of Magistrate Judge Joseph R. McCrorey, made in accordance with 28 U.S.C. § 636 (b) and Local Rule 73.02(B)(2)(g), D.S.C., filed on February 3, 2012. Dkt. No. 30. The Report recommends that the court grant Defendants' motion to dismiss and for summary judgment. *Id.* Plaintiff filed objections to the Report through her attorney on March 8, 2012.[3] Dkt. No. 37.

## STANDARD

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of any portion of the Magistrate Judge's Report and Recommendation to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). In the absence of an objection, the court reviews the Report

---

[3] Objections to the Report were due on February 21, 2012. On February 22, 2012, the court received a "Motion for Extension of Time to File Objection to Report and Recommendation" by mail from Plaintiff (acting pro se) in which Plaintiff sought an additional 30 days to file objections and asked the court to require her attorney to continue service as counsel. Dkt. No. 32. Plaintiff attached correspondence from counsel, dated February 10, 2012, which advised Plaintiff that her attorney intended to seek to be relieved as counsel. The court entered a docket text order requiring counsel to file objections on behalf of Plaintiff, given the age of the motion, by March 8, 2012. Dkt. No. 33. On March 8, 2012, counsel filed objections and attached Plaintiff's additional handwritten objections to the objections. Dkt. No. 37. The court addresses both counsel's objections and Plaintiff's objections.

and Recommendation only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation") (citation omitted).

## DISCUSSION

The court has made a *de novo* review of the Report and underlying record as to all matters to which Plaintiff lodged an objection and has reviewed the Report for clear error as to other matters. Having done so, the undersigned finds no substantive errors in the Report and concurs with the Report in its analysis. The court will, however, briefly address each of Plaintiff's objections.

### A. Individual Liability Against Defendant Stacy Branham

The Magistrate Judge concluded that Defendant Stacy Branham, an employee of KershawHealth, is entitled to summary judgment because supervisory liability is barred under Title VII, the ADEA, and SCHAL. Dkt. No. 30 at 9-10. The Fourth Circuit held in *Lissau v. Southern Foods Serv., Inc.*, 159 F. 3d 177 (4th Cir. 1998), that no supervisory liability exists in Title VII cases. Plaintiff argues that, in *Lissau*, the Fourth Circuit did not overrule its prior holding in *Paroline v. Unisys Corp.*, 879 F.2d 100 (4th Cir. 1989), *vacated in part on other grounds*, 900 F.2d 27 (4th Cir. 1990), in which the court held that an individual supervisor with certain delegated authority can qualify as an employer under Title VII. The court finds that the Magistrate Judge correctly concluded that, under *Lissau*, Defendant Branham is not subject to liability under Title VII. Even if *Lissau* did not overrule *Paroline*, there is no evidence that Defendant Branham exercised significant control over Plaintiff's hiring, firing, or conditions of employment such that Branham

qualifies as an employer under *Paroline*.[4] Further, because the SCHAL tracks Title VII jurisprudence, Branham cannot be held liable under SCHAL.[5] *See Birbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510 (4th Cir. 1994).

Finally, the Fourth Circuit has held that the ADEA limits liability to employers and prohibits individual liability against employees as agents of the employer. *Birbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510 (4th Cir. 1994). The Report correctly concluded that Branham is not subject to liability under Title VII, SCHAL, and the ADEA.

**B. Eleventh Amendment Bar to ADEA Claim Against KershawHealth**

The Magistrate Judge concluded that Plaintiff's ADEA claim against KershawHealth is barred by the Eleventh Amendment. Dkt. No. 30 at 11-13. States, and their alter egos, are immune from suit in federal court unless the state waives its immunity, *Lapides v. Board of Regents*, 535 U.S. 613 (2002), or Congress abrogates its immunity, *Kimel v. Florida Bd. of Regents*, 528 U.S. 62 (2000). Defendants have submitted uncontroverted evidence that KershawHealth is the alter ego of the State of South Carolina for Eleventh Amendment purposes.[6] *See* Dkt. No. 30 at 11-12.

---

[4] Plaintiff states in her objections that Branham has the authority to hire and fire employees. Dkt. No. 37-1 at 3 ("Reportedly Stacy Branham has been or has had the authority to hire and has been instrumental in the discharge of employees."). However, Plaintiff does not allege that Branham hired or fired her. Neither has Plaintiff submitted evidence to support her contention.

[5] In her objections, Plaintiff argues that an individual may be liable for age and race discrimination under the New York Human Rights Law ("HRL") and the California Fair Employment and Housing Act ("FEHA"). Dkt. No. 37-1 at 2-3. These laws do not apply to Plaintiff because the alleged discrimination occurred in South Carolina. The extent to which an individual may be liable under HRL and FEHA is, therefore, irrelevant to this case.

[6] Plaintiff contends in her objections that KershawHealth was not an agent of the State when the alleged acts of age discrimination began. Dkt. No. 37-1 at 5-6. According to Plaintiff, KershawHealth was previously named "Kershaw County, and County hospitals" and was not entitled to Eleventh Amendment immunity. *Id.* Although it appears that KershawHealth was previously named Kershaw County Medical Center, there is no evidence that the facility only became an agent of the State when the name changed to KershawHealth. In fact, as explained in the

5

Plaintiff has submitted no evidence that the State has waived immunity for ADEA claims. Further, the United States Supreme Court has held that Congress did not abrogate a state's Eleventh Amendment immunity when it enacted the ADEA. *Kimel*. 528 U.S. at 91. For the reasons stated in the Report, the Magistrate Judge correctly concluded that KershawHealth is the alter ego of the State of South Carolina for Eleventh Amendment purposes and is immune from suit under the ADEA.

### C. Disparate Treatment/Discrete Acts

In her complaint, Plaintiff claims that she "has not been given the same employment, transfer, bonus, and/or advancement opportunities as white employees." Dkt. No. 1 at 3, ¶9. The Magistrate Judge concluded that Plaintiff's disparate treatment claims under Title VII are procedurally barred because they were neither specifically included in her EEOC charge nor reasonably related to the claims in her EEOC charge.[7] Dkt. No. 30 at 13-14. Plaintiff does not specifically object to this finding.

The Magistrate Judge further concluded that even if these claims are not procedurally barred, Plaintiff has failed to establish a prima facie case of disparate treatment based on race related to hiring or firing, transfer, bonus, or promotions. *Id.* at 14. The Magistrate Judge also found that Plaintiff has failed to establish a prima facie case of discriminatory discharge because she has not been discharged by KershawHealth. *Id.* at 14 n.7.

---

Report, Defendants have submitted South Carolina statutes which indicate that "KershawHealth's Board was created by an Act of the South Carolina General Assembly [in 1954], has functions and powers which are legislatively prescribed, and had its name[] changed through Acts of the General Assembly." Dkt. No. 30 at 11 n.6.

[7] In the charge filed with the EEOC, Plaintiff complained that she is assigned more patients than younger nurses or white nurses and that she receives more patients that require greater work, such as patients being admitted. She does not allege that she failed to receive a bonus or that she was removed from the Baylor plan.

Plaintiff's counsel argues that Plaintiff's disparate treatment claim can be demonstrated by differences in patient assignments. Dkt. No. 37 at 5. However, the Magistrate Judge thoroughly reviewed the assignment sheets submitted by Plaintiff as well as the affidavit of Stacy Collier, the Director of Inpatient Nursing at KershawHealth, which contains Ms. Collier's assessment of nurse assignments.[8] *See* Dkt. No. 30 at 18-19. The Magistrate Judge found that the evidence does not indicate that Plaintiff was assigned more patients than younger, white nurses.[9] *Id.* at 19. After reviewing the evidence submitted to the Magistrate Judge and the evidence submitted by Plaintiff with her objections, the court finds that the evidence does not support Plaintiff's allegation that she was assigned more patients than younger, white nurses. Plaintiff has similarly failed to provide evidence to support her allegation that she was assigned more difficult patients or patients that required more attention and/or time from a nurse.[10]

---

[8] As the Magistrate Judge stated, Plaintiff submitted 16 Staffing Assignment sheets (from 16 dates) as evidence of being assigned more patients. Dkt. No. 30 at 17-18. The sheets do not purport to list patient acuity. Defendants submitted evidence summarizing all of the Staffing Assignment sheets when Plaintiff worked during the alleged period of discrimination. *Id.* at 18. The alleged period of discrimination in Plaintiff's EEOC charge was February 2009 to August 2009. Based on a review of all Staffing Assignment sheets from that period, Plaintiff had an average of 5.01 patients per shift. There were seven white nurses in her unit that had higher patient averages per shift. Using the time period from January 2008 to August 2010 (from the time Plaintiff alleges the discrimination began until the filing of the lawsuit), Plaintiff was assigned an average of 5.07 patients per shift, with six white nurses having the same or greater average. *Id.*

[9] According to Plaintiff, she may have been the only black nurse in the hospital on the Baylor plan or even the only nurse on the Baylor plan. Dkt. No. 37-1 at 9. Further, Plaintiff claims that she was the only employee to "max out" her hours to earn a bonus in 2010. *Id.* Plaintiff, therefore, argues that her "transfer or bonus issues should not have been compared with those of white employees as this was not the case; there has been some misunderstanding somewhere." *Id.* Even assuming these claims are true, Plaintiff has failed to establish that the hospital's explanation for removing Plaintiff from the Baylor plan (attendance problems) was pretext for race or age discrimination. Plaintiff has similarly failed to provide evidence that the change in the requirements to receive a bonus in 2010 was to harm Plaintiff in retaliation for her EEOC charge of age and race discrimination or some other protected activity.

[10] Plaintiff complains that she "always receive[ed] the first admissions, receiv[ed] patients with high acuity or [was] assigned to whichever side the hall that had empty rooms (and would []

Plaintiff argues that the disparate treatment relates to her removal from the Baylor plan and her failure to receive a bonus in November or December of 2010. Dkt. No. 37-1 at 6. Defendant Branham testified that Plaintiff was removed from the Baylor plan because she missed six days of work without advance permission. Dkt. No. 22-6 at 3. Plaintiff alleges that Defendants used her absences as a coverup for race and age discrimination.

Although a demotion or change in benefits can be an adverse employment action, Plaintiff has failed to establish a prima facie case of disparate treatment or that her removal from the Baylor plan was because of her race or age. The evidence establishes that she was removed from the Baylor plan because she missed six days of work without advance permission, in violation of the terms of the Baylor plan. As explained below, Plaintiff has failed to provide evidence that this reason was pretext for race or age discrimination.

Regarding Plaintiff's lack of bonus in 2010, Plaintiff has failed to provide evidence to establish that the bonus was eliminated because of Plaintiff's race or age. Plaintiff alleges that she received a bonus for "maxing out" her hours in 2009 but that the bonus was eliminated in 2010. Dkt. No. 37-1 at 7-8. According to Plaintiff, she heard that she was the only person to "max out" her hours in 2010, but that she did not receive the bonus because management increased the number of hours required to "max out." *Id.* Plaintiff contends that this was not included in her EEOC charge because it occurred in November or December 2010, which was after she filed her EEOC charge in August 2009. *Id.* at 8. As explained in the Report, assuming Plaintiff's claim regarding failure to receive a bonus is not administratively barred, Plaintiff has failed to show that any similarly-situated employee received a bonus in 2010. Dkt. No. 30 at 15. In fact, Plaintiff testified

---

receive[] first admissions). Dkt. No. 37 at 5. Plaintiff claims that patients that are being admitted ("first admissions") require more time than admitted patients.

8

that she did not know if any other employee received a bonus that she did not receive. *Id.* Further, Plaintiff has failed to submit evidence that the bonus requirements were altered to prevent Plaintiff from receiving a bonus because of her age or race. The court finds that the Magistrate Judge properly considered and understood Plaintiff's allegations and found that Plaintiff did not establish a disparate treatment claim under either Title VII or the ADEA.

### D. Harassment/Hostile Environment Claims

The Magistrate Judge found that Plaintiff failed to establish a hostile work environment claim based on her race or age because (1) Plaintiff failed to provide evidence to establish that the alleged harassment or hostile work environment was because of her race or age, and (2) Plaintiff failed to provide evidence to demonstrate that the alleged harassment was severe or pervasive. Dkt. No. 30 at 15-20.

Plaintiff's counsel argues that Plaintiff submitted "a diary of discrimination based on age and race" which included "harassing behavior." Dkt. No. 37 at 6. The exhibit cited is a two-page list of thirteen nurses that is entitled "Examples of Nurses Discriminated Against Due to Race, And Or Age." Dkt. No. 25-1. This documents lists thirteen nurses (including Plaintiff), seven of whom are white, three are black, and one is Asian. Two nurses do not have a race listed. Some of the ages of the nurses are listed. This document fails to show that Ella Hall was subjected to harassment based on race or age, but merely provides examples of nurses that Plaintiff believes experienced race and/or age discrimination. This document is not supported by any evidence or affidavits from the listed nurses. At most, this document, if its contents are accepted as true, demonstrates that many nurses – white, black, and Asian nurses of all ages – suffered harassment. The court agrees with the Magistrate Judge's finding that this document does not establish harassment based on race or age. Dkt. No. 30 at 16-17.

Plaintiff's counsel also argues that Defendants' conduct was severe or pervasive to alter the conditions of employment as evidenced by the number of patients assigned to Plaintiff and the patients with higher acuity. Dkt. No. 37 at 6. As explained above, the Magistrate Judge reviewed the assignment sheets submitted by Plaintiff and found that the sheets did not establish that Plaintiff received more patients or higher acuity patients than white or younger nurses.

The Magistrate Judge found that Plaintiff's conclusory statements of harassment were not supported by other evidence. Dkt. No. 30 at 19. Plaintiff's counsel contends that another black nurse, Betty Anthony, corroborated Plaintiff's allegation that she was assigned more patients or patients with higher acuity. Dkt. No. 37 at 6. Ms. Anthony has also filed a lawsuit alleging discrimination against Defendant KershawHealth, and testified that admissions were not rotated evenly among nurses. Ms. Anthony testified that she reported to Defendant Branham that Plaintiff was receiving many first admissions. Dkt. No. 31 at 3. When asked why she felt Plaintiff was harassed because of her race, Ms. Anthony said that she was assigned Plaintiff's patients the following day (presumably because she was also black) and that those patients were difficult, i.e., "basically incapacitated." *Id.* at 4 (dep. p. 35). Although Ms. Anthony's testimony corroborates Plaintiff's allegations that Plaintiff was receiving higher acuity patients, Ms. Anthony was unable to provide any further evidence to support Plaintiff's allegation that it was because Plaintiff was black. Plaintiff admitted that it was not Plaintiff's job responsibility to assess the acuity of patients and that Plaintiff only learned of the acuity of patients during the report at the beginning of her shifts. Dkt. No. 22-4 at 6. Plaintiff also admitted that she may not be present for the full report to learn about the acuity of patients not assigned to her and that the acuity of patients may change throughout a shift. Dkt. No. 22-3 at 46. Further, Ms. Anthony testified that a nurse does not know the acuity of patient after the report is over, unless the nurse is treating the patient. Dkt. No. 22-7

at 3. The court finds that Ms. Anthony's testimony provides little support for Plaintiff's allegation of harassment.

Plaintiff objects that the Magistrate Judge failed to consider all of the evidence she submitted to establish harassment and lists 26 incidences of alleged harassment.[11] Dkt. No. 37-2 at 2-10. The court has reviewed the evidence submitted originally to the Magistrate Judge and the additional evidence submitted by Plaintiff with her objections.[12] The court finds that the additional evidence does not change the result. The specific examples of harassment that she provided in her objections are not supported by any evidence other than her statements. *See Gilliam v. South Carolina Dept. Of Juvenile Justice*, 474 F.3d 134, 142 (4th Cir. 2007) ("Although [the plaintiff] made several general statements of dissimilar treatment, she provided very few specifics. The few specific examples [the plaintiff] did proffer were not supported by any evidence other than her own statements, which often lacked detail.").

**E. Retaliation**

The Magistrate Judge found that Plaintiff has not established a claim of retaliation. Dkt. No. 30 at 20-23. Plaintiff's retaliation claim is based on her writing an email to the Vice President of

---

[11] For example, Plaintiff alleges that she was discriminated against because she was not part of the "click" (clique) or "clan" to which Defendant Branham belonged. Dkt. No. 37-2 at 3. Plaintiff argues that she received many unnecessary phone calls when she was on call and that she was called in to work more than white nurses when she was on call. *Id.* at 5, 10. She alleges that she had to use paid time off to get "respite" to avoid being called in. *Id.* at 9. She also claims her "right to Free Speech" was violated when she was placed on probation. *Id.* at 8. None of these allegations have been supported by additional evidence.

[12] Plaintiff has submitted additional pages from her diary explaining the number of patients she had on particular dates as well one additional Inpatient Nursing Staffing Assignment dated August 14, 2008. Dkt. No. 37-6 at 5. According to Plaintiff, this Staffing Assignment shows that she was assigned seven patients, more than every other nurse. However, it appears from the Staffing Assignment that she was assigned six patients during the day shift and six patients during the night shift. The other nurses appear to have been assigned six patients each during the day and night shifts.

Nursing Services (Ms. Keefe) concerning the firing of another nurse, Nurse Bock, in July 2007. Id. at 20. According to Plaintiff, Nurse Bock was fired because of her age. Dkt. No. 37-3 at 3. Plaintiff wrote a letter defending Nurse Bock but failed to mention age, race, or any other type of discrimination in her letter to Ms. Keefe. Dkt. No. 22-5 at 35. Defendants, in turn, allegedly removed her from the Baylor plan because of her letter.[13]

The Magistrate Judge concluded that Plaintiff's claim of retaliation is procedurally barred because it was neither included in her EEOC charge filed in 2009, nor like or related to any claim included in her charge. Dkt. No. 30 at 21. Even if the claim is not procedurally barred, her retaliation claim fails because (1) Plaintiff did not engage in protected activity when she complained by letter about the firing of another employee because she made no reference to discrimination; (2) Plaintiff cannot show that Defendant Branham knew about the letter to Ms. Keefe prior to Plaintiff's removal from the Baylor plan; and (3) Defendants have provided a legitimate, non-retaliatory reason for removing Plaintiff from the Baylor plan and Plaintiff has failed to show that this reason is pretext. *Id.* at 21-23.

Plaintiff argues that the reason provided by Defendants for removing Plaintiff from the Baylor plan (attendance) was pretext. Dkt. No. 37-3 at 4. Although Plaintiff explains the nature of her time off in 2007 that led to her absences,[14] Plaintiff has failed to prove that she did not miss at

---

[13] Plaintiff alleges that Defendants also retaliated against her through harassment, which included assigning her more patients and higher acuity patients. Plaintiff's counsel argues that Plaintiff was subjected to "retaliatory work assignments" as documented in the nurse assignment sheets, and in Plaintiff's diaries and emails. Dkt. No. 37 at 7-8. However, as explained above, the court does not find that Plaintiff was assigned more patients or higher acuity patients than white or younger nurses.

[14] Plaintiff contends that she took time off between August 30, 2007 and September 22, 2007 to travel across the country to Oregon with her husband. Dkt. No. 37-3 at 4. Plaintiff states that she and her husband were considering relocating to Oregon and that they would have stayed in Oregon had she been able to secure employment. *Id.* at 5. Plaintiff contends that her absences in 2007 were

12

least six days of work without authorization. *Id.* at 4-6. Neither has Plaintiff submitted evidence that she submitted a "vacation request" and received "approval." Despite Plaintiff's belief that she was removed from the Baylor plan because she was a black or older nurse, Plaintiff fails to submit evidence to demonstrate that the reason for her removal from the Baylor plan was race or age discrimination, and not her failure to comply with the terms and conditions of the Baylor plan. *See Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 (4th Cir. 1989) ("[A] plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action.").

To overcome the Magistrate Judge's finding that Plaintiff did not engage in a protected activity when she wrote a letter complaining about the firing of Nurse Bock to Ms. Keefe, Plaintiff argues that she engaged in protected activity when Nurse Bock filed Plaintiff's letter in support of Nurse Bock's charge of discrimination with the EEOC. Dkt. No. 37-3 at 3. Assuming this is a protected activity, Plaintiff has failed to establish that any of the charge nurses or Defendant Branham knew that this letter was submitted to the EEOC. Further, Nurse Bock filed her charge of discrimination with the EEOC on February 19, 2010, years after Plaintiff was removed from the Baylor plan or the alleged retaliatory work assignments began. *See* Dkt. No. 24 at 3; Dkt. No. 25 at 3. The court, therefore, rejects Plaintiff's objection that she was retaliated against based on Nurse Bock's EEOC filing.

**F. SCHAL**

The Magistrate Judge found that Plaintiff's claims under the SCHAL are procedurally barred for failure to file a charge of discrimination with the State Human Affairs Commission. Dkt. No.

---

unusual and that they should not have been considered as regular absences. *Id.* However, Plaintiff does not submit evidence that she received a leave of absence or resigned from the hospital.

13

30 at 24. Substantively, the Magistrate Judge found that Plaintiff's SCHAL claims fail for the same reasons her federal claims fail.[15] *Id.* Plaintiff's counsel does not object to the Magistrate Judge's finding regarding the SCHAL claims. Plaintiff objects that the SCHAL is not procedurally barred because she filed an EEOC charge and the EEOC should have forwarded the charge to the SCHAL. Dkt. No. 37-3 at 3; Dkt. No. 37-4 at 8. The court does not address this objection because the court concludes that even if Plaintiff's claims under the SCHAL are not procedurally barred, Plaintiff's SCHAL claims fail for the same reasons her Title VII claims fail.

## CONCLUSION

For the reasons stated above, the court adopts the Report and grants Defendants' motion to dismiss and for summary judgment. Plaintiff's claims are dismissed with prejudice.

**IT IS SO ORDERED.**

S/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
March 19, 2012

---

[15] Further, the Magistrate Judge found that Plaintiff abandoned her SCHAL claims as she did not address them in her response to Defendants' motion to dismiss and for summary judgment. Dkt. No. 30 at 24.